PORT NORRIS EXPRESS CO., INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

("Allen Truck & Trailer Leasing, Inc.")

PORT NORRIS EXPRESS CO., INC., Petitioner,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.

("Dean Hughs, Inc.")

Nos. 83–3122, 83–3229.

United States Court of Appeals, Third Circuit.

Argued Dec. 13, 1983.

Decided Feb. 2, 1984.

Rehearing and Rehearing En Banc Denied May 15, 1984.

William P. Jackson, Jr. (argued), Jackson & Jessup, P.C., Arlington, Va., for petitioner.

Edward T. Hand, Robert B. Nicholson, Dept. of Justice, Washington, D.C., for respondent U.S. in No. 83–3122.

Louis Mackall (argued), Ernest B. Abbott, I.C.C., Washington, D.C., for respondent I.C.C. in No. 83–3122.

Robert B. Nicholson, Margaret Halpern, Antitrust Div., Dept. of Justice, Washington, D.C. for respondent U.S. in No. 83–3229.

Dennis J. Starks, I.C.C., Washington, D.C., for respondent I.C.C. in No. 83–3229.

## OPINION OF THE COURT

Before SEITZ, Chief Judge, and GARTH and BECKER, Circuit Judges.

SEITZ, Chief Judge.

Port Norris Express Co., Inc., petitions this court to vacate two orders of the Interstate Commerce Commission granting motor common carrier authorities. We will consider the two petitions separately. Jurisdiction exists under 28 U.S.C. §§ 2321, 2342(5).

### ALLEN TRUCK & TRAILER LEASING, INC.

Allen Truck & Trailer Leasing, Inc., filed a two-part application with the Interstate Commerce Commission for motor common carrier authority to transport commodities. We are concerned here only with the second part, in which Allen requested an authority to transport clay, concrete, glass, and stone products between certain designated locations. At the time of this application, Allen was authorized as a motor contract carrier. Allen also leased equipment to other carriers and transported commodities exempt from ICC regulation.

In its application, Allen stated that it intended to provide the proposed service with "tractor trailer units suited to meet the transportation requirements of the supporting shippers, including flatbed trailers and lowboy trailers." Allen owned and operated motor vehicle tractors, semi-trailers, "lowboy" trailers, and van-type units and planned to acquire similar additional equipment if the requested authority were granted. Allen stated that it was in full

compliance with all pertinent safety regulations. Accompanying Allen's application were statements of support from six shippers, one of whom indicated a need for transportation of glass and glassware. That shipper stated that Allen would be able to transport the needed commodities in "van-type, flatbed and lowboy equipment". Neither Allen nor any of the supporting shippers mentioned bulk hauling.

Port Norris, a common carrier specializing in bulk hauling, filed an objection to Allen's application, asserting in part that Allen had failed to show it was "fit, willing and able" to haul bulk commodities or that the proposed service would respond to a "public demand or need". Allen responded that it "would have no objection to incorporating a restriction ... so as to exclude the transportation of 'commodities in bulk'." After consideration of the application, the objection, and the response, the ICC Review Board granted the requested authority without a bulk restriction. The Board stated that "[b]ulk restrictions on specific commodity grants of authority are contrary to Commission policy." Port Norris filed an appeal with the ICC Appellate Division, and Allen replied, stating that although it did not object to a bulk restriction in its authority, it disagreed with Port Norris's assertion that the ICC had acted unlawfully in granting the unrestricted authority. The Appellate Division denied the appeal, and Port Norris now petitions this court to vacate the ICC's grant of the unrestricted authority and order the issuance of an authority properly restricted against bulk hauling.

■ Our review of the ICC's action is controlled by the Motor Carrier Act of 1980 and the Administrative Procedure Act. Under the Motor Carrier Act, the I.C.C. may grant a motor common carrier authority only if the applicant is "fit, willing, and able to provide the transportation to be authorized," and is able to establish "that the service proposed will serve a useful public purpose, responsive to a public demand or need." 49 U.S.C. § 10922(b)(1)(A), (B). Evidence establishing "public demand

or need" may come from "public officials, shippers, receivers, trade associations, civil associations, consumers, and employee groups, as well as from the applicant itself." *Port Norris Express Co., Inc. v. I.C.C.,* 687 F.2d 803, 807 (3d Cir.1982) (*"Port Norris I"*). Under the Administrative Procedure Act, the decision to grant the authority may not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence". 5 U.S.C. § 706(2)(A), (E). *See Port Norris Express Co., Inc. v. I.C.C.,* 697 F.2d 497, 502 (3d Cir.1982) (*"Port Norris II"*).

The leading case applying these requirements to authorizations for *general* bulk hauling is *American Trucking Association, Inc. v. I.C.C.,* 659 F.2d 452 (5th Cir. 1981), *enforced by mandamus,* 669 F.2d 957 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1272, 75 L.Ed.2d 493 (1983). There the court rejected the Commission's decision to eliminate all bulk restrictions from authorities to transport general commodities. According to the court, the Commission exceeded its statutory mandate "by granting authority to carriers who cannot demonstrate that they are 'fit, willing, and able'." *Id.* at 473. The court explained that fitness to haul bulk cannot be assumed because such service requires special equipment and cleaning facilities, and in the case of hazardous commodities it requires special safety precautions and insurance limits. *Id.* In a subsequent decision, the Fifth Circuit noted that an applicant need not always have bulk hauling equipment at the time of the application. Instead, the Commission may grant the authority if the applicant is "willing and has the financial resources to obtain the equipment." *Steere Tank Lines, Inc. v. I.C.C.,* 675 F.2d 103, 104 n. 2 (5th Cir.1982).

■ In *Port Norris I, supra,* this court adopted the Fifth Circuit's analysis. We held that the ICC may not justify its issuance of bulk hauling authorities for general commodities purely on policy grounds but must base its decision on record evidence. 687 F.2d at 809–11. More specif-

ically, we stated that the Commission may not issue a certificate unless there is evidence of the applicant's present intent to haul bulk, *id.* at 812, evidence that the applicant has or intends to acquire the necessary equipment, *id.* at 813, and evidence of public demand for bulk hauling, *id.*

The Commission argues that we should not apply our holding in *Port Norris I* to the issuance of bulk hauling authorities for specific commodities, as opposed to general commodities. Concerns about special equipment, cleaning, safety, and insurance are not so pressing where one knows the identity of the commodity, according to the Commission. The Commission acknowledges in its brief, however, that bulk hauling of some commodities does cause special concern. In addition, it will always be necessary to determine the availability of appropriate equipment and the existence of public demand, regardless of the particular commodity in issue. We therefore conclude that the *Port Norris I* analysis is applicable to grants of bulk authority for specific as well as general commodities.

■ We need not rule on the exact quantum of evidence required to support the grant of an authority to haul specific commodities in bulk. The Interstate Commerce Commission, not the federal judiciary, has expertise in trucking issues, and the Commission may in its discretion conclude that grants of bulk hauling certificates for certain commodities require less evidence than grants of similar certificates for other commodities. We only require that the certificates be supported by substantial evidence and that the issuance of the certificates not be arbitrary or capricious.[1]

■ Applying our holding in *Port Norris I* to the facts of Allen's application, we hold that the ICC improperly failed to include a bulk hauling restriction in Allen's authority to transport clay, concrete, glass, and stone products. The Commission Review Board stated explicitly that a bulk restriction was not included because it was contrary to Commission policy. Allen showed no interest in hauling bulk, and in fact Allen informed the Commission that it had no objection to the restriction. Allen offered no evidence that it either possessed or intended to acquire bulk hauling equipment. Finally, none of Allen's supporting shippers indicated any need for bulk hauling. Although one shipper dealt in commodities that could be hauled in bulk, our decision in *Port Norris I* makes clear that this is not enough. 687 F.2d at 813.

The ICC defends its decision to grant the unrestricted authority on two evidentiary grounds. We note that the Commission did not rely on these grounds in its original decision to grant the authority. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The ICC argues that the grant of bulk hauling authority was supported by evidence of Allen's fitness to haul the particular commodities in non-bulk form. Acceptance of this argument would effectively overrule our holding in *Port Norris I* that an applicant for bulk hauling authority is required by 49 U.S.C. § 10922(b)(1) to offer evidence of its fitness to provide that particular service.

■ The Commission also argues that Port Norris has offered no evidence that bulk hauling of the relevant commodities should be distinguished from non-bulk hauling. This is not fatal to Port Norris's petition, however, because Port Norris has no burden to offer such evidence. Section 10922 places the burden on the applicant to establish that it is fit, willing, and able to provide the proposed service and that there is shipper demand for the service. If the applicant meets this burden, the Commission will presume that issuance of the certificate is consistent with the public convenience and necessity unless the protesting party can prove the contrary. *C & H Transportation Co., Inc. v. I.C.C.*, 704 F.2d 834, 841–42 (5th Cir.1983). In this

---

1. We need not decide in this case whether, on the basis of evidentiary hearings conducted pursuant to its rulemaking authority, the Commission could adopt rules requiring the grant of unrestricted certificates for the transport of some specific commodities.

case Port Norris argues that Allen has not met its initial burden and that the burden of proof has therefore not shifted. We agree.

■ We cannot conclude that the authority granted to Allen to haul clay, concrete, glass, and stone products was supported by substantial evidence, and we therefore vacate that part of the Commission's order and remand for issuance of an authority restricted to non-bulk hauling.

## DEAN HUGHS, INC.

Dean Hughs, Inc., applied to the Commission for motor common carrier authority to transport general commodities (except class A and B explosives and household goods) between points in the continental United States. At the time of the application, Hughs held common and contract carrier authorities to transport commodities throughout the United States. Hughs stated in its application that it possessed five tractors and fifteen trailers, and that it would "procure additional equipment, either by leasing or purchase, should this authority be approved." Hughs further stated that it observed all pertinent safety regulations. The application did not refer to bulk hauling.

Supporting Hughs's application were seventy-two shipper statements, at least six of which specified a need for bulk hauling. Three of these five shippers required bulk hauling between various points in Illinois, Iowa, Missouri, Indiana, Michigan, and Wisconsin. Two of the shippers requested bulk hauling between Illinois and points "throughout the Continental United States".

Port Norris filed a protest against Hughs's petition, arguing that the request for an unrestricted authority was not supported by the evidence. The Commission Review Board rejected this argument and granted the authority without a bulk hauling restriction. The Board explained that the grant of unrestricted authority was supported by evidence of Hughs's existing equipment and its intention to acquire additional equipment, by the experience of its drivers, and by its compliance with safety regulations.

Shortly after the Board's decision, Hughs and Port Norris filed a joint petition requesting that the Commission reopen the proceedings and consider certain information set forth therein. The purpose of the petition was "to eliminate any grant of bulk authority to serve New Jersey." The parties stated that Hughs had "no present or foreseeable future interest in serving points in New Jersey under any bulk authority," and that Hughs was "neither willing nor able" to provide such service. Moreover, the parties stated that the evidence "[did] not prove a public demand or need" for such service, nor did it warrant an inference of need. To the extent that evidence did support an authority for bulk hauling in New Jersey, Hughs wished to withdraw it. The joint petition did not discuss or refer to any particular evidence already in the record, nor did it offer any new evidence beyond the averments quoted.

Before receiving a ruling on this joint petition, Port Norris appealed the Board's certification of Hughs to the Appellate Division. Port Norris renewed its argument that the evidence did not support the grant of a bulk hauling authority, especially in view of the information set forth in the joint petition. Hughs replied that it had no objection to a restriction on bulk hauling in New Jersey, but it disagreed with Port Norris's suggestion that the restriction should be broader than described in the joint petition.[2]

The Appellate Division rejected the joint petition and denied the appeal. The Division explained that the petition was a restrictive amendment not binding on the Commission and was entered into "only for the purpose of reducing opposition to an

---

2. Although Port Norris has suggested at various times that it is challenging Hughs's entire bulk hauling authority, we believe that Port Norris's petition to this court challenges only the New Jersey bulk hauling authority. *See* Petitioner's Reply Brief at 6 n. 2.

application." Apart from the petition, the Division considered that the evidence supported the bulk hauling authority, and that denial of such authority "would result in an inability to meet all the shipper's needs." The Division also noted its general policy against granting bulk restrictions. Port Norris appealed to the full Commission, was denied without substantive comment, and now petitions this court to vacate the Commission's decision and remand with an order to reissue a restricted authority.

█ We first consider whether the ICC was justified in rejecting the joint petition. Port Norris argues that the petition was a "stipulation of evidence" or a "clarification of the record", but we cannot accept this contention. Instead, we agree with the Commission that Hughs and Port Norris simply sought to offer a restrictive amendment to Hughs's original application. The joint petition itself contained no evidence, nor did it refer specifically to any evidence in the record. The petition stated that Hughs was no longer interested in a bulk hauling authority in New Jersey and wished to withdraw any evidence that would support such an authority. The petition did not explain why Hughs's sudden loss of interest extended only to New Jersey, Port Norris's base of operations. The inference is an easy one that Hughs and Port Norris submitted the petition simply to eliminate Port Norris's opposition. If this petition was a "clarification of the record", so is any restrictive amendment.

The Commission argues that it can disregard restrictive amendments that are not in the public interest, and this argument has considerable support. The Commission's regulations governing application procedures prohibit restrictive amendments.[3] The Fifth Circuit has recently approved the prohibition, agreeing with the Commission that "negotiations between applicants and protestants regarding restrictive amendments distorts [sic] the public interest as-

pect of the licensing process." *American Transfer & Storage Co. v. I.C.C.,* 719 F.2d 1283, 1300 (5th Cir.1983). Our own court has suggested that, at least in some circumstances, the Commission may ignore a restrictive amendment. In *Ward Trucking Corp. v. United States,* 574 F.2d 168, 170 (3d Cir.1978), we noted the protestant's concession "that the Commissioner is not bound by restrictions which have been stipulated by the parties where such restrictions fail to achieve results consistent with the public interest and inimical to practicable and effective regulation."

Port Norris argues, however, that the Commission's refusal to consider the joint petition is inconsistent with *Port Norris I, supra,* where we held that an applicant's statement that it has no "present intent" to haul bulk and will not appeal the denial of such authority is relevant evidence in determining whether the applicant has met its burden under section 10922(b)(1). 687 F.2d at 811–12. Port Norris overlooks an important distinction between the present case and *Port Norris I.* In the earlier case, there was no evidence supporting the grant of an unrestricted authority or contradicting the applicant's statement that it had no intention to haul bulk. The statement suggested that the applicant had applied for an unrestricted authority simply "because it [felt] compelled to do so by ICC policy." *Id.* at 812. Moreover, the circumstances of the case suggested that the statement was not prompted by a desire to settle litigation with a protesting carrier, but rather by a genuine lack of interest in bulk hauling. *Id.* Finally, there was no evidence of shipper demand for bulk hauling. Because the Commission had no valid reason to grant an unrestricted authority, we did not believe the Commission was justified in ignoring a statement by the applicant that it would accept a restricted authority.

The case of Hughs's application is much different. Although Hughs did not specif-

---

**3.** At the time of Hughs's application, this prohibition was contained in the Commission's interim regulations at 49 C.F.R. § 1100.251(k) (1981). By the time the petition was filed, the final regulations had replaced the interim regulations. The prohibition is now found at 49 C.F.R. § 1160.11.

ically request a bulk hauling authority in its application, several of the shipper support statements appended to the application expressed a need for bulk hauling. In addition, Hughs made clear to the Commission prior to the first administrative appeal that it wished to keep the bulk hauling authority for every state but New Jersey. These facts, coupled with the statement in the joint petition that Port Norris would withdraw its protest if the proposed restriction were accepted, clearly supported the Appellate Division's finding that the amendment was prompted by a desire to settle litigation with Port Norris. We therefore do not believe that *Port Norris I* governs our present inquiry, and we conclude that the Commission's decision to disregard the joint petition was warranted as an attempt to protect the public interest and achieve practicable and effective regulation.

We do not believe that the Eleventh Circuit's decision in *RTC Transportation, Inc. v. I.C.C.*, 708 F.2d 617 (11th Cir.1983), argues for a different result. There the court held that the Commission had improperly ignored a "stipulation" between the applicant and protestant. Although the language of that document resembles the language in Hughs's petition, the other circumstances of the case were significantly different from those considered here. As in *Port Norris I*, there was no evidence supporting the grant of an unrestricted authority.[4] Moreover, the Commission Review Board offered no explanation for its decision to ignore the document. Finally, the Commission failed to give notice to the parties that the stipulation would be ignored, prompting the parties mistakenly to withdraw their opposition. None of this is true of the present case, and we therefore find *RTC Transportation* inapposite.

■ Having concluded that the Commission acted properly in ignoring the joint petition, we now consider whether the Commission's grant of an unrestricted authority was supported by substantial evidence and was not arbitrary or capricious. The evidence supporting the authority was not overwhelming. Hughs's application did not specify whether Hughs desired a restricted or unrestricted authority. Construing the application in light of the shipper support statements requesting bulk service, however, we believe that Hughs may fairly be said to have applied for bulk as well as non-bulk authority, and that Hughs was therefore "willing" to provide bulk service. 49 U.S.C. § 10922(b)(1)(A). Hughs also stated that it would acquire any additional equipment necessary to provide the authorized service. This, together with evidence of Hughs's trucking experience, satisfies the "able" requirement as interpreted in *Port Norris I, supra.* 49 U.S.C. § 10922(b)(1)(A). Finally, the five shippers who expressed a need for bulk hauling demonstrated a public demand or need for service, as required under section 10922(b)(1)(B).[5] We recognize that the Commission, and particularly the Appellate Division, relied in part on general policy grounds in granting the bulk authority, in violation of our holding in *Port Norris I*. We conclude, however, that the Commission adduced sufficient evidence in support of its decision to satisfy the "substantial evidence" and "arbitrary and capricious" tests. We therefore affirm the Commission's order granting the unrestricted authority.

## CONCLUSION

The Commission's order granting an unrestricted authority to Allen Truck & Trailer Leasing, Inc., is vacated, and the case is remanded to the Commission with an order to grant a new authority containing a restriction on bulk hauling. The Commis-

---

**4.** The restriction in *RTC Transportation* was against transportation of goods requiring mechanical refrigeration.

**5.** Once an applicant has met its burden under 49 U.S.C. § 10922(b)(1), the protestant may rebut

the evidence by proving "that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity." *Id.* Port Norris has not attempted to rebut Hughs's evidence.

sion's order granting an unrestricted authority to Dean Hughs, Inc., is affirmed.

BECKER, Circuit Judge, concurring.

I join in the opinion as well as the judgment of the Court. I add this brief concurrence only because I do not believe that the court's opinion sufficiently addresses what seems to me to be an important issue in the *Allen* case: whether the *policy* of the Commission in refusing to place bulk restrictions on specific commodity grants of authority justifies the Commission's decision.[1] Because I do not believe that the Commission's policy is necessarily either irrational or inconsistent with the Motor Carrier Act of 1980, I believe that the following two comments are in order.

First, it seems to me both sensible and entirely consistent with the Motor Carrier Act of 1980 to allow the Commission to grant authority for transportation of specific commodities without having to distinguish between "bulk" and "non-bulk" form, provided the Commission can demonstrate on the basis of evidence that there is no reason to make this distinction for a particular commodity group. For example, this might be true in the case of glass, sand, and related commodities. The Motor Carrier Act of 1980 had the purpose of allowing broader grants of authority than had been allowed under the prior act. If the characteristics that render a carrier fit, willing, and able to transport a particular group of commodities in "non-bulk" form are the same as those that would render it fit, willing, and able to carry the same commodity in "bulk" there is no reason to require the Commission to adduce evidence separately.[2]

Second, I believe that if the Commission wishes to justify its position on such a policy basis, and in effect to lay down rules to supplement the requirements of the Motor Carrier Act, it should follow the procedures laid down in the Administrative Procedure Act for rulemaking.[3] The holding of this Court in *Port Norris I*, and more particularly that of the Fifth Circuit in *American Trucking Association*, indicate that the Commission has been granting authorities that are so broad that they render meaningless the statutory requirements that a carrier demonstrate both its fitness, willingness, and ability to transport the commodities in question, and public demand or need for the proposed service. The Commission clearly disagrees, and argues in its brief that the realities of the trucking industry make the "bulk—non-bulk" distinction an artificial construct, at least in the area of "clay, concrete, glass, and stone products." Given the demonstrated judicial concerns about the breadth of grants of authority, and particularly with the Commission's refusal to distinguish bulk and non-bulk transportation, in my view, the appropriate way for the Commission to justify its position would be a rulemaking proceeding, in which a factual record can be developed by both the Commission and its opponents. Such an approach would greatly facilitate judicial review.

---

1. The Commission's policy was announced in two unpublished opinions, *Porter Lines, Inc., Extension—New York,* and *OMH Trucking Common Carrier Application.* Part II E of the appellant's brief is entitled "The Commission's Policy Against Bulk Restrictions in Specific Commodity Grants is Rational and Consistent with the Act," and, as I read the Commission's briefs, this is the Commission's principal argument.

2. In making the determination whether "bulk" and "non-bulk" services should be differentiated for purposes of requiring applicants to show fitness, willingness, ability, and public demand,

the Commission should look to the factors mentioned in *Port Norris I* and *American Trucking Association*—i.e., any differences in requirements for safety, upkeep of equipment, etc.

3. *See e.g., Securities and Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947) ("The function of filling in the interstices of the '[Securities and Exchange]' Act should be performed, as much as possible, through [rulemaking procedures].") Chief Judge Seitz recognizes this possibility in footnote 1 of his opinion.