**PORT NORRIS EXPRESS CO., INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 84–3196.

United States Court of Appeals, Third Circuit.

Argued Dec. 11, 1984.

Decided March 12, 1985.

Washington, D.C., Essie F. Stevens, Rockville, Md., (argued), for respondent I.C.C.

Before GARTH and HIGGINBOTHAM, Circuit Judges and McGLYNN, District Judge.[*]

## OPINION OF THE COURT

GARTH, Circuit Judge:

In this petition for review, we are asked to determine whether the Interstate Commerce Commission ("ICC") erred in granting L.S. Geist, Inc. ("Geist") authority to transport general commodities without a bulk[1] restriction. The petitioner, Port Norris Express Co., Inc. ("Port Norris"), argues that Geist did not present sufficient evidence to support the ICC's finding that there was a need for general bulk service, and that therefore, such authority was improperly granted by the ICC.

After a careful review of the record, we conclude that Geist did not present substantial evidence of a public demand or need for bulk service. Accordingly, we grant Port Norris' petition.

William P. Jackson, Jr., Daniel P. Stipano, David Reeves (argued), Jackson & Jessup, P.C., Arlington, Va., for petitioner Port Norris Express Co., Inc.

Edward T. Hand, Robert B. Nicholson, Dept. of Justice, Washington, D.C., for respondent United States of America.

Robert S. Burk, Acting General Counsel, Henri F. Rush, Associate Gen. Counsel,

## I.

On July 1, 1983, Geist filed an application with the ICC which sought to expand its existing radial[2] authorization to transport commodities. Geist's existing authority allowed it to transport food and related, specified products in non-bulk form. Geist also had the authority to transport fruit juices in bulk form. In its application for extended authorization, Geist sought non-

---

[*] Honorable Joseph L. McGlynn, Jr., United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[1] Commodities carried in bulk are contained in a vehicle without packaging. Bulk commodities are restrained during transportation only by the interior walls of the carrying vehicle. Certain products such as sand, coal, and petroleum products can be carried as bulk items in dump trucks or tank trailers, as well as transported in non-bulk form in bags or drums. *See Steere Tank Lines, Inc. v. I.C.C.,* 666 F.2d 255, 257–58 n. 3 (5th Cir.1982), *cert. denied,* 460 U.S. 1025, 103 S.Ct. 1264, 75 L.Ed.2d 499 (1983).

[2] Radial authority requires the applicant to provide service which must either originate or terminate in a specified area, known as the base territory, which is usually a county, city, state, or small cluster of states. For example, a radial authority description might permit a carrier to handle freight moving from Pennsylvania to any other state and from those states back to Pennsylvania, but not from a point outside Pennsylvania to another point outside Pennsylvania. *See generally* Classification of Motor Carriers of Property in the Matter of the Classification of Brokers and Motor Carriers of Property, 2 M.C.C. 703, 709 (1937).

radial[3] authority to transport "[g]eneral commodities (except classes A and B explosives, household goods, and commodities in bulk)"[4] among a total of 32 states. App. at 4.

In support of its application, Geist submitted statements from eleven shippers, many of which Geist was already servicing under its existing authority. These shippers expressed a need for more complete and dependable transportation of their particular commodities. Their products included printing paper, tires, wheels, tubes, mobile homes, fertilizer, farm equipment, shell eggs, liquid egg tankers, baked goods, and raw ingredients. App. at 17. In addition, the eleven shippers identified specific origin and destination points between which they required transport for their products. None of the shippers expressed a need for bulk service, nor did any shipper state that Geist was currently providing it with bulk service.

Also submitted in support of Geist's application was the verified statement of Lawrence S. Geist, president of the company. In that statement, Lawrence Geist averred that his company owned and operated seven tractors, eight insulated trailers, six refrigerated trailers, seven open top trailers, four flat-bed trailers, and one "straight truck." He stated that he was fully familiar with the safety regulations promulgated by the Department of Transportation and the ICC. App. at 10. Lawrence Geist also stated that he sought expanded authority, which would permit the carriage of products other than food and related commodities, because his present limited authority often prevented his company from obtaining other commodities to transport on its return trips (backhaul). Lawrence Geist claimed that this deadhead hauling resulted in inefficient service. App. at 11–12.

As previously noted, although Geist's application did not seek authority to transport bulk commodities, the verified statement of Lawrence Geist did not exclude bulk transportation from the authority sought. Nevertheless, Lawrence Geist's verified statement did not specify that there existed a public demand or need for bulk transportation, nor did his statement claim that his company was currently providing such bulk service.

Thus, at the time the ICC granted Geist general bulk authority, which is the only authority at issue in this case, the ICC had before it, in addition to the Geist application for extended authority (for other commodities to other states), the following evidence: (1) Geist's existing authority; (2) the statements from eleven shippers in support of Geist's application for extended authority; and (3) Lawrence Geist's verified statement.

The ICC Review Board, in determining that Geist had presented sufficient evidence of a public need for bulk authority, stated:

> The commodities of the supporting shippers cover several generic groups and includes some items which are susceptible to transportation in bulk.... When the shipper evidence is considered along with the scope of applicant's present exempt operations, and the difficulty applicant has encountered in obtaining sufficient return traffic to operate efficiently, we conclude a public demand or need has been demonstrated for the entire scope of authority sought.

App. at 83.

Port Norris filed an appeal from the Review Board's decision, arguing that Geist had failed to present any evidence of a need for bulk transportation authority. The Appeals Division of the ICC, relying entirely on the Review Board's reasoning, rejected Port Norris' argument. Port Nor-

---

**3.** Nonradial authority is the type of authority which allows a carrier to originate and terminate service at any point in a single broad territory. *Id.*

**4.** Geist did not request bulk authority—the only authority at issue in this case—in its initial application. As discussed, *infra*, however, the verified statement of Lawrence Geist, president of the company, did not exempt bulk transportation from the authority sought.

ris then petitioned this court for review of the ICC's grant of bulk authority.

## II.

Under the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980), before the ICC may grant authority to an applicant, it must find that the applicant is "fit, willing, and able" to perform the authorized service. 49 U.S.C. 10922(b)(1)(A). Further, under section 10922(b)(1)(B), the ICC must find that there is a "public demand or need" for the service. In the present case, Port Norris does not question Geist's fitness, willingness, or ability to transport general commodities in bulk,[5] rather Port Norris challenges only whether Geist has evidenced a public demand or need for such transportation. Our scope of review under the Administrative Procedure Act precludes us from reversing a decision by the ICC unless we find that the ICC's decision in granting authority was "arbitrary, capricious" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A)(E). *See Port Norris Express Co., Inc. v. I.C.C.*, 729 F.2d 204, 207 (3d Cir.1984) ("*Port Norris III*"). Substantial evidence has been held to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).

The present case raises the same issues as those addressed by this court's prior decision in *Port Norris Express Co., Inc. v. I.C.C.*, 687 F.2d 803 (3d Cir.1982) ("*Port Norris I*"). In *Port Norris I*, we were asked, as we are here, to review an ICC's grant of general bulk authority to determine whether the ICC's decision was supported by substantial evidence. One of the contentions with which we dealt in *Port Norris I* was that the carrier in question, Dennis Trucking Company, did not present sufficient evidence of a public demand or need for bulk service. Although this court in *Port Norris I* ultimately concluded that Dennis Trucking did not demonstrate suffi-

cient public need for bulk transportation to support the ICC's grant of general bulk authority, it nevertheless held that there were many possible sources through which an applicant could introduce such evidence. We stated that a demonstration of public need "could be made by public officials, shippers, receivers, trade associations, civic associations, consumers, and employee groups, as well as by the applicant itself." 687 F.2d at 807 (quoting H.R.Rep. No. 96–1069, 96th Cong., 2d Sess. 14–15 *reprinted in* 1980 U.S.Code Cong. & Ad.News 2283, 2296–97).

In the present case, the ICC concluded that there existed a public demand or need for bulk transportation. It based its decision on three grounds: (1) the "susceptibility" of the supporting shipper's commodities to movement in bulk form; (2) the scope of Geist's existing authority; and (3) the difficulty Geist reported in obtaining backhauls and in operating efficiently. To determine whether the ICC's decision can be upheld, we must examine each of these grounds in turn to decide whether, individually or combined, they constitute substantial evidence of a public demand or need for bulk transportation.

## A.

Not one of the eleven supporting shippers had expressed a need for transportation of commodities in bulk. Rather, the ICC inferred that need from the fact that certain of these shippers' commodities were "susceptible" to bulk transportation. In *Port Norris I*, this court addressed the permissible inferences that could be drawn from the statements of shippers in support of an applicant's requested authority:

The evidence of public demand or need in this proceeding is so indirect and speculative as to fail even the minimal standard of section 10922(b)(1)(B). Of course, the ICC is entitled to make certain inferences from the evidence. But when the sole "evidence presented by persons supporting the issuance of the

---

5. Since the issue is not before us, we make no finding as to whether Geist has presented substantial evidence of its fitness, willingness, or ability to transport commodities in bulk.

certificate" pursuant to section 10922(b)(1)(B) is the statements of shippers who plan to use the service proposed, it cannot be too much to expect one or more of these shippers—we express no view as to how many are needed—to make it clear that they believe they have some need or are prepared to make a demand for the service.

687 F.2d at 813.

Thus, in *Port Norris I*, we required some amount of direct evidence from the shippers that they affirmatively desired or had a need for bulk service. Here, as in *Port Norris I*, no such direct evidence was presented. Indeed, no evidence whatsoever bearing on the demand or need for bulk service was forthcoming. Consequently, in the present case, the ICC's mere reliance on the "susceptibility" of certain shippers' commodities to transportation in bulk was inappropriate and insufficient for purposes of satisfying the statutory requirements.

### B.

The ICC also based its decision to grant bulk authority on the scope of Geist's existing authority. That authority, which limited Geist to carrying food and related specified products in nonbulk form, also permitted Geist to transport in tank vehicles, fruit juices in bulk from an eleven state area to Berks County, Pennsylvania.

We note initially that Geist's existing specific bulk authority is, in essence, the only factor that might distinguish the instant case from *Port Norris I*, where the applicant had no existing bulk authority for any product. However, the evidence of Geist's existing authority, even though it includes bulk transportation of fruit juices, is, without more, only tangentially related to the existence of a public demand or need for bulk transportation.

First, although it is acknowledged that Geist possessed the authority to carry fruit juices in bulk, the record is barren of any proof that Geist ever exercised that authority by transporting juices in bulk form. Second, it strikes us as significant that if this aspect of Geist's evidence was determi-

native of the ICC's ruling, we would have expected that specific mention of such bulk transport would have appeared in the Review Board's decision. As we have observed, it did not. The Review Board referred only to "the scope of applicant's [Geist's] present exempt operations." App. at 83.

■ In any event, we conclude that the mere existence of Geist's existing bulk authority, without at least further evidence that Geist was, in fact, exercising that authority, cannot constitute sufficient evidence to demonstrate a public demand or need for bulk transportation.

### C.

Finally, the ICC relies upon Geist's difficulty in obtaining sufficient return traffic (i.e., backhauling) to operate efficiently as additional evidence to support its grant of bulk authority. We accord this evidence little weight, however, since there is nothing in the record to suggest that the return traffic to which Geist referred, involved or required transportation of commodities in bulk as distinct from transportation of nonbulk products. Although the ICC apparently inferred that the backhaul problem related to bulk transportation, on this record, such an inference can constitute no more than speculation, and is insufficient to support a grant of bulk authority under the Motor Carrier Act.

### D.

The ICC argues in its brief that its decision was also based on the fact that a grant of bulk authority to Geist would result in more efficient operations, and would enable Geist to provide a more complete service. This, in turn, it is contended, would lead to enhanced competition, all to the benefit of shippers and the general public.

■ Even assuming these were valid considerations which would satisfy the statute's mandate, we are limited on review to the grounds on which the Review Board relied. Our task in determining whether the ICC's decision was arbitrary, capri-

cious, or unsupported by substantial evidence is necessarily informed by the evidence before the ICC as well as by the ICC's reasoning. Because this efficiency argument was apparently not considered by the Review Board (it does not appear in the Review Board's opinion), we will not consider it on this petition for review. As this Court recognized in *Port Norris I:*

> The "reasoned basis for the agency's action" must be provided by the agency in the administrative proceedings. We "may not accept appellate counsel's *post hoc* rationalizations for agency action."

687 F.2d at 810 (citations omitted). Moreover, even if the Review Board did rely on this efficiency argument, such policy grounds have been held to be insufficient to support a grant of bulk authority. The ICC must identify evidence on the record, apart from policy grounds, which demonstrate a public demand or need for bulk transportation. *See Port Norris I,* 687 F.2d at 809–11. *See also, Port Norris III,* 729 F.2d at 207.

### III.

Thus, after a careful reading of the record, we conclude that the three grounds upon which the ICC relied do not constitute substantial evidence of public demand or need for bulk transportation, which would authorize the ICC to grant general bulk authority to Geist. Nor are we persuaded by the policy argument which appears in the ICC's brief. Our decision, of course, does not prevent Geist from submitting another application for bulk authority, and supporting that application with direct evidence that there exists a public demand for such bulk service. We hold only that, on

the basis of the record before us, Geist has failed to meet the statutory requirement of 49 U.S.C. § 10922(b)(1)(B) in the present case.

Accordingly, we will grant Port Norris' petition for review, and the grant of authority to Geist insofar as the grant encompasses authority to transport in bulk will be vacated.[6]

### A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.

The majority holds today that the Interstate Commerce Commission ("ICC") erred in granting L.S. Geist, Inc. ("Geist") authority to transport general commodities without a bulk restriction, one reason being that the ICC impermissibly inferred a "public demand or need" for bulk hauling from the fact that certain of the eleven supporting shippers' commodities were "susceptible" to bulk transportation, in contravention of this court's decision in *Port Norris Express Co. v. ICC,* 687 F.2d 803 (3d Cir. 1982) ("*Port Norris I*"). While I concur in the result, I write separately to note that the courts of appeals are perilously close to substituting their judgment for that of the ICC, the agency endowed with the administrative expertise to implement the congressional mandate underlying the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980).[1] I write separately to caution lest we open the door for too broad an application of this court's holding in *Port Norris I.*

As I view *Port Norris I,* having sat on the original panel, we set forth a minimum evidentiary standard by which to assess the sufficiency of a motor carrier's application when supported only by the submission of shippers' statements. In *Port Norris I,*

---

**6.** We were informed by the parties that, on the petition of the ICC, two related cases bearing the same title, *Port Norris Express Co., Inc. v. I.C.C.,* Nos. 84–3000 & 84–3207, have been held in abeyance pending a regulation which is soon to be promulgated by the ICC. That regulation ostensibly bears on the issues presented here. Since the ICC has not provided us with the regulation in question, nor has either party briefed the impact, if any, of the pending regulation on the facts of the present case, and more importantly, since the ICC has not asked that

this case be held in abeyance, we see no reason to withhold our judgment.

**1.** 49 U.S.C. § 10922.
> "The principal goals of the legislation ... are to promote greater competition by allowing easier carrier entry, to simplify and expedite the certification process, and to lessen restrictions on motor carrier operations."

*Port Norris Express Co. v. ICC,* 687 F.2d 803, 806 (3d Cir.1982) ("*Port Norris I*") (quoting *Gamble v. ICC,* 636 F.2d 1101, 1103 (5th Cir.1981)).

this court vacated the ICC's grant of a trucking company's application for certificate of authority to transport general commodities, including bulk commodities. We held, *inter alia*, that the evidence of public demand or need, as gleaned from thirty-five supporting shippers' statements, was insufficient, notwithstanding that a few shippers stated that they shipped commodities *susceptible* of being transported in bulk. Judge Adams, writing for the court, articulated our rationale: the supporting shippers failed to *specifically* articulate a need for *bulk* service. *Port Norris I, supra,* 687 F.2d at 813.[2] Considering the permissible inferences that the ICC can draw from the evidence offered in support of an applicant's requested authority, we stated:

> The evidence of public demand or need in this proceeding is so indirect and speculative as to fail even the minimal standard of section 10922(b)(1)(B). *Of course, the ICC is entitled to make certain inferences from the evidence.* But when the *sole* "evidence presented by persons supporting the issuance of the certificate" pursuant to section 10922(b)(1)(B) *is the statements of shippers* who plan to use the service proposed, it cannot be too much to expect one or more of these shippers—we express no view as to how many are needed—to make it clear that they believe they have some need or are prepared to make a demand for the service.

*Id.* at 813 (emphasis added).

The majority does not address adequately the ICC's assertion that *Port Norris I* is

distinguishable from the present case because in that case, the shippers' statements constituted the *sole* evidence of public demand or need supporting the application. The ICC contends that Geist's grant was based not only on supporting shippers statements but also on *additional* evidence: Geist's existing authority, Geist's backhauling difficulties, and the ICC's evaluation of competition and assessment of Geist's efficiency. While none of the shippers here expressed a need for bulk service, the ICC argues that the "susceptibility" of shippers' commodities to bulk transportation can be sufficient to constitute substantial evidence *if* viewed in conjunction with *other evidence* of public demand or need. From this perspective, the ICC asserts that *Port Norris I* is inapposite.[3]

The ICC's argument is not without merit. This court recently discussed *Port Norris I* in *Port Norris Express Co. v. ICC,* 729 F.2d 204 (3d Cir.1984) (*"Port Norris III"*), noting that "[i]n the earlier case, there was *no* evidence supporting the grant of unrestricted authority...." 729 F.2d at 210. In that circumstance, the requirement of direct evidence from the shippers that they affirmatively desired or had a need for bulk service was entirely reasonable.[4]

While I believe *Port Norris I* controls insofar as it addresses the permissible inferences that the ICC can draw from the statements of shippers, in my opinion, it does *not* hold that the ICC can never legitimately recognize that certain commodities generally move in bulk and thus reasonably

---

**2.** In *Port Norris I,* the applicant, Dennis Trucking Co., did not have the authority to transport in bulk, had not previously carried bulk commodities, stated that it had no present intent to haul in bulk, and although the application was supported by statements of shippers who shipped commodities susceptible of being transported in bulk, none specifically stated that it needed Dennis to transport any commodities in bulk. *Port Norris I,* 687 F.2d at 811–813.

**3.** *Port Norris Express Co. v. ICC,* 697 F.2d 497 (3d Cir.1982) (*"Port Norris II"*) provided a stronger case for the ICC. In holding that substantial evidence supported the grant of bulk authority, this court noted that the supporting

shippers identified a range of commodities which the applicant would be transporting for them under the operating authority and the applicant was an established bulk carrier. The supporting shippers, however, were shippers of *bulk* commodities and each expressed a need for the services.

**4.** In *Port Norris III,* we held that *Port Norris I* was not controlling. The applicant for general commodities authority in *Port Norris III* did not specifically request bulk hauling authority *but* several of the supporting shipper statements did specifically express a need for bulk hauling. *Port Norris III,* 729 F.2d at 211.

infer a need for bulk service from "mere susceptibility" when the application as a whole provides *additional direct evidence* to support such an inference. In other words, *Port Norris I* should not be construed as holding that the ICC's reliance on the "susceptibility" of certain shippers' commodities to transportation in bulk, in the absence of express statements of need, is always inappropriate and insufficient for purposes of satisfying the statutory requirements:

> [A] reasonable inference [is] within the ICC's range of expertise and experience, and supported by its past practice and precedents ... The Commission makes the inference *from* the need for service to move a certain commodity to the need for bulk service, where that commodity generally moves in bulk.

*Port Norris Express Co. v. ICC*, 746 F.2d 69, 74 (D.C.Cir.1984) (*"Port Norris D-X"*) (MacKinnon dissenting).

In my view, a grant of bulk authority, where supporting shippers identify a range of bulk commodities which the applicant would be transporting for them under the operation authority, even if each shipper did *not* specifically express a need for the service, may be supported by substantial evidence so long as there is additional direct evidence submitted to permit the ICC to make a reasonable inference of need.[5]

My point is simply that *Port Norris I* does not command a reviewing court to conclude a lack of substantial evidence

solely from the absence of express statements of need from shippers except where the shippers evidence constitutes the sole factual predicate for the proposed grant of authority. For instance, had Geist demonstrated not only that it had *existing authority* to transport in bulk but also that it had *exercised* that authority, I believe that it would have been well within the province of the ICC to infer a public demand or need when coupled with the "susceptibility" of the serviced shippers' commodities to bulk transportation. *See, e.g., Port Norris Express Co. v. ICC*, 697 F.2d 497 (3d Cir.1982) (*"Port Norris II"*). The shippers used Geist's services and if Geist was indeed exercising its authority, presumably it was for the benefit of at least one shipper. "The line between an inference based on *one* shipper's evidence of need, and an inference based on *no* evidence at all of need is a thin one. But it is a valid distinction ... because it is the minimum distinction required by the terms of section 10922(b)(1)." *Port Norris—D-X*, 746 F.2d at 73. Such a distinction, however, can not be made in this case; the additional evidence put forth is *not* sufficient to justify an inference of public demand or need. On that basis, mere "susceptibility" of commodities to bulk hauling, combined only with the existence of authority to transport in bulk without more does not satisfy the statutory criteria.

I concur with the hope that the deluge of Port Norris cases[6] has peaked. Nonethe-

---

**5.** As we stated in *Port Norris I:*

> The normal way to establish [evidence of a public need or demand for the service has been for applicants to submit evidence of some of those who would use the service proposed.... However, the [ICC is not restricted] in which factors it can consider in determining whether the proposed service is responsive to a public demand or need. These factors include the following: a need or demand for new services, innovative quality or price options, increased competition, greater fuel efficiency, improved service for small communities, improved opportunities for minorities, and any other benefits that would serve a useful public purpose.

*Port Norris I*, 687 F.2d at 807 (quoting H.R.Rep. No. 96–1069, 96th Cong., 2d Sess. 14–15 *reprint-*

*ed in* 1980 U.S.Code Cong. & Ad.News 2283, 2296–97.)

**6.** *See, e.g., Port Norris Express Co. v. ICC*, 729 F.2d 204 (3d Cir.1984) (*"Port Norris III"*); *Port Norris Express Co. v. ICC*, 697 F.2d 497 (3d Cir.1982) (*"Port Norris II"*); *Port Norris Express Co. v. ICC*, 687 F.2d 803 (3d Cir.1982) (*"Port Norris I"*); *Port Norris Express Co. v. ICC*, 751 F.2d 1280 (D.C.Cir.1985) (*"Port Norris—Beneux"*); *Port Norris Express Co. v. ICC*, 746 F.2d 69 (D.C.Cir.1984) (*"Port Norris—D-X"*); *Department of Transportation, et al. v. ICC*, 733 F.2d 105 (D.C.Cir.1984) (*Port Norris, Intervenor*); *Port Norris Express Co. v. ICC*, 728 F.2d 543 (D.C.Cir.1984) (*"Port Norris—Fiorot"*); *Ritter Transp., Inc. v. ICC*, 697 F.2d 1153 (D.C.Cir.1983) (*Port Norris Intervenor*); *Ritter Transp., Inc. v. ICC*, 684 F.2d 86 (D.C.1982) (*Port Norris, Interve-*

less, until the Supreme Court advises us that our decision in *Port Norris I* was in error, I trust that the ICC will be a bit more careful in articulating the bases for its grants of authority even though it may find our holding in *Port Norris I* less than palatable.

*nor*); *Central Transport, Inc. v. U.S.*, 694 F.2d 968    (4th Cir.1982) (*Port Norris, Intervenor*).